**In re the Matter of the Financial Responsibility for the Out–of–Home Placement Costs for S.M.**

**No. A10–2127.**

Supreme Court of Minnesota.

May 2, 2012.

Robert D. Hinnenthal, Brown County Attorney, Mary Kay Mages, Assistant County Attorney, New Ulm, MN, for appellant Brown County.

Lori Swanson, Attorney General, St. Paul, MN, for respondent Minnesota Department of Human Services.

Gordon L. Moore, III, Nobles County Attorney, Worthington, MN, for respondent Nobles County.

Robert C. O'Connor, Jackson County Attorney, Sherry E. Haley, Assistant County Attorney, Jackson, MN, for respondent Jackson County.

## OPINION

PAGE, Justice.

This case arises out of a dispute between Brown and Nobles Counties over which county is the "county of financial responsibility" for the out-of-home placement costs incurred after October 1, 2008, for a minor child named S.M. By order dated April 20, 2010, the Minnesota Department of Human Services (MDHS) held that Nobles County was responsible for S.M.'s out-of-home placement costs. Nobles County appealed to the Nobles County District Court, which reversed the MDHS decision based on its conclusion that the legislative history of Minn.Stat. § 256G.10 (2010) indicates that the Legislature intended the county of financial responsibility to be the county where the child last resided with a parent. Based on its reading of section 256G.10, the court held that Brown County was the county of financial responsibility. The court of appeals affirmed the district court in a published opinion, concluding that section 256G.10 was ambiguous and that only the interpretation that assigned financial responsibility to the county where the child last resided with a parent was consistent with the legislative history and administratively practicable. *In re S.M.*, 806 N.W.2d 79 (Minn.App.2011).

In its petition for review, Brown County challenges the lower court decisions holding it responsible for S.M.'s out-of-home placement costs after October 1, 2008. Because we conclude that the language of Minn.Stat. § 256G.10 is unambiguous and that, by its plain language, the county of financial responsibility is the county of the residence of the parent with whom the minor child last lived, determined at the time the child entered excluded time status,[1] we reverse.

The facts relevant to our disposition of this case are taken from the April 20, 2010, MDHS order and are not disputed by the parties.

S.M. was born on October 1, 1991. At all relevant times, S.M.'s parents were separated. From May 2007 to December 2007, S.M. lived with his father in Jackson County, Minnesota. He moved to Brown County to live with his mother in January 2008. From February 5, 2008, to March 3, 2008, S.M. lived part of the time with his mother in Brown County and part of the time in Redwood County with a family friend. On March 14, S.M.'s mother moved her residence from Brown County to Nobles County. S.M. continued living with the family friend and did not join his mother in Nobles County. On May 16, 2008, the Jackson County District Court removed S.M. from the Redwood County home of the family friend and placed him

---

1. "Excluded time" includes "any period of time an applicant spends in a ... shelter other than an emergency shelter, halfway house, foster home ... residential facility offering care ... or correctional facility." Minn.Stat. § 256G.02, subd. 6(a) (2010). MDHS determined that S.M. entered excluded time status on May 16, 2008, when he was placed into detention by Jackson County.

in detention at Kids Place Prairie Academy. S.M. remained in a number of different out-of-home placement settings until his 19th birthday and did not reside with either parent during that period of time. Brown County was the last county in which S.M. resided with a parent before he entered excluded time status. Thus, it is clear from the record that his mother is the parent with whom S.M. last lived and that S.M. last resided with his mother in Brown County in March 2008. It is also clear that S.M.'s mother was residing in Nobles County when S.M. entered excluded time status in May 2008.

At a hearing before the MDHS, Jackson County sought reimbursement for all out-of-home placement costs incurred for S.M. after October 1, 2008, including future costs. MDHS concluded that Nobles County was the county of financial responsibility for the out-of-home placement costs for S.M. from October 1, 2008, and after. Nobles County appealed to the district court, which reversed MDHS, concluding that a "common sense reading and application of Minn.Stat. § 256G.10 leads to the conclusion that residency under derivative settlement is determined based on where the parent and the child last resided together when the child was in a nonexcluded time setting." Based on that conclusion, the district court found that Brown County, where S.M. and his mother last lived together, was responsible for the out-of-home placement costs for S.M. The court of appeals affirmed in a published opinion. *In re S.M.*, 806 N.W.2d 79.

■ At issue in this appeal is the interpretation of Minn.Stat. § 256G.10, which provides that, for purposes of determining which county has financial responsibility for social services for a minor child, "[t]he residence of the parent of a minor child, with whom that child last lived in a nonexcluded time setting, or guardian of a ward shall determine the residence of the child or ward for all social services governed by this chapter." "Nonexcluded time" is time not spent in a correctional facility or in an institution. Minn.Stat. § 256G.02, subd. 6(a). Section 256G.10 is part of chapter 256G, which governs the Minnesota human services system, including social services agencies, welfare agencies, and other institutions and organizations. *See* Minn. Stat. § 256G.01, subd. 1 (2010). Under chapter 256G, residence for the purposes of establishing financial responsibility is determined "as of the date a local agency receives a signed request or signed application or the date of eligibility, whichever is later." Minn.Stat. § 256G.04, subd. 1 (2010).

■ We review questions of statutory interpretation de novo. *State v. Engle*, 743 N.W.2d 592, 593 (Minn.2008). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Every law shall be construed, if possible, to give effect to all its provisions." Minn.Stat. § 645.16 (2010).

■ The first question is whether the statute is ambiguous. *Swanson v. Brewster*, 784 N.W.2d 264, 274 (Minn.2010). In answering that question, we construe the statute's words and phrases according to their plain and ordinary meaning. *See Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 608 (Minn. 1980). "A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000) (quoting *Amaral v. St. Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999)). "If the language of the statute is clear and free of all ambiguity we will apply the plain meaning." *State v. Al-Naseer*, 734 N.W.2d 679, 684 (Minn.2007). We construe the statute as a whole and

interpret each section in light of the surrounding sections to avoid conflicting interpretations. *Schroedl*, 616 N.W.2d at 277. Finally, when the "words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." *State v. Mauer*, 741 N.W.2d 107, 111 (Minn.2007); *Engle*, 743 N.W.2d at 593.

We conclude that the statutory language of section 256G.10 is clear and free from ambiguity. According to the plain language of section 256G.10, the residence of a minor child for purposes of services governed by chapter 256G is determined by the residence of the parent with whom that child last lived in a nonexcluded time setting. *See* Minn.Stat. § 256G.10. In this case, the parties do not dispute that S.M.'s mother is the parent with whom S.M. last lived before entering excluded time status. Thus, it is the residence of S.M.'s mother that determines S.M.'s residence. While there is no dispute that it is the residence of S.M.'s mother that is to be used to determine S.M.'s residence, because S.M.'s mother resided in more than one county and because S.M. did not reside with his mother in each of those counties, there is a dispute as to which county of residence of S.M's mother is the county of financial responsibility. Nobles County argues, and the district court and the court of appeals held, that it is the county of the parent's residence at the time the child last lived with the parent that is the county of financial responsibility. Here, S.M. last lived with his mother in Brown County and, therefore, according to the trial court and the court of appeals, Brown County is the county of financial responsibility. Brown County contends that Minn.Stat. § 256G.10 is unambiguous and that a plain reading of its language leads to the conclusion that Nobles County, the county in which S.M.'s mother resided when S.M. entered excluded time status, is the county of responsibility. We agree with Brown County.

Under Minn.Stat. § 256G.04, for purposes of determining financial responsibility, residence is to be determined as of the date of eligibility for the services provided. *See* Minn.Stat. § 256G.04 ("For purposes of establishing financial responsibility, residence must be determined as of the date a local agency receives a signed request or signed application or the date of eligibility, whichever is later."). In this case, there is no dispute that S.M.'s date of eligibility for services was May 16, 2008, the date on which S.M. entered excluded time status. Reading the plain language of sections 256G.04 and 256G.10 together, the county of financial responsibility is the county in which S.M.'s mother resided on May 16, 2008. As the record indicates, S.M.'s mother resided in Nobles County on May 16, 2008. Therefore, we conclude that Nobles County is the county of financial responsibility for S.M.'s out-of-home placement costs for services provided on and after October 1, 2008.

Reversed.